**George H. POIRIER, Plaintiff,**

v.

**Leo D. WELCH et al., Defendants.**

**Civ. A. No. 2254–64.**

United States District Court
District of Columbia.

Sept. 15, 1964.

Paul R. Connolly, Jr., Washington, D. C., for plaintiff.

Lloyd N. Cutler, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This is an action by a stockholder of the Communications Satellite Corporation to enjoin a stockholders' meeting called for September 17, 1964. The matter is before the Court at this time on an application for a preliminary injunction to secure the same relief.

The subject matter of this litigation staggers the imagination. A few years ago it would have been considered pure fantasy, yet the rapid advances in science and its wonders have made this project a reality. It involves a system of communication in space consisting of a series of satellites placed in orbit around the earth for the purpose of relaying telecommunications between terminal stations at different places on the surface of the earth. It comprises the possibility of a system of satellites at an altitude of approximately 6,000 miles above the surface of the earth and another system of satellites at an altitude of approximately 22,-

300 miles. The plan and the enterprise is global in its nature and therefore it is contemplated that, to some extent at least, it would be carried on in cooperation with other countries. The Congress determined that, although this project had a vast public interest, it should be financed by private capital and conducted by a private corporation, with a participation in its control on the part of representatives of the Government.

Accordingly, by the Act of August 31, 1962, 76 Stat. 419, 47 U.S.C. §§ 701 et seq., known as the Communications Satellite Act of 1962, the Congress authorized the creation of a Communications Satellite Corporation for profit which would not be an agency or establishment of the United States Government. The President of the United States was empowered to appoint incorporators, by and with the advice and consent of the Senate, who would serve as the initial Board of Directors until the first annual meeting of stockholders or until their successors were elected and qualified. It was provided that the incorporators should arrange for an initial stock offering and take any other steps necessary to establish the corporation, including the filing of articles of incorporation. The corporation was to have a Board of Directors consisting of three members to be appointed by the President of the United States, six members to be elected by those stockholders who were communications common carriers, and six to be elected by the other stockholders of the corporation.

The President in due course designated a number of incorporators, who caused a corporation to be organized under the laws of the District of Columbia. A public offering of stock was then made, one-half being purchased by communications common carriers and the other half by members of the public. The two groups of shares were known as Series I and Series II. Each group consisted of five million shares of the value of $20. The corporation has 130,000 shareholders or thereabouts.

The record shows that the preliminary offering of stock was made on May 6, 1964 and that a final prospectus was issued on June 2, 1964. The sale was completed on June 11, 1964. The existing Board of Directors thereupon called a stockholders' meeting to be held on September 17, 1964. As is the usual practice in conducting corporate affairs, the call for the meeting included a form of proxy to be executed by those stockholders who did not intend to attend in person. The proxy designated six of the incorporators as candidates for election to the new Board of Directors. These six had been selected previously out of the entire first Board of Directors.

The plaintiff then informed the officers of the corporation that he had acquired 210 shares of the stock of the company and that he desired to be a candidate for election to the Board of Directors, as was his right. He made a demand or request for a list of all the stockholders in order that he might circularize all of them and solicit their proxies. This was also his right. The Secretary of the corporation notified him that he could obtain such a list from the transfer agent of the company, a financial institution located in Chicago, Illinois, upon the payment of their fees and upon the filing of an affidavit showing the purpose for which he was going to use it and that he was not going to utilize it for any improper end. It does not appear whether the plaintiff actually proceeded to obtain such a list, or at least the fact seems to be far from clear. There is a dispute in the affidavits as to whether the plaintiff demanded an opportunity to see the list located at the company's office in Washington, D. C., and whether he was refused an opportunity to do so. He claims that this occurred, whereas the Secretary of the corporation denies that this happened. The plaintiff then brought this suit to enjoin the holding of the meeting and the matter is now before this Court, as has been stated, on a motion for a preliminary injunction.

■■ In determining an application for a preliminary injunction two factors must be considered: first, what is the plaintiff's cause of action and is he likely

to prevail on the law and the facts in its eventual outcome; second, whether on the equities, sometimes referred to as balance of convenience, the plaintiff should receive the drastic remedy of a preliminary injunction. This aspect of the matter is directed to the discretion of the court of equity.

■■■■ Going to the first question, it is somewhat difficult to discern what exactly is the cause of action that the plaintiff seeks to assert. In part, it seems to be that his demand to see and examine the record of the list of stockholders was not complied with. It is not disputed, however, that he was informed that such a list might be obtained for a fee from the transfer agent of the company. Then he complains of the fact that the present directors have suggested the names of six of their number as candidates for election and are soliciting proxies accordingly. The Court finds no illegality or fraud or any other taint or infirmity in the fact that the present Board of Directors determined to propose six of their number for reelection. There is an allegation that they have not given sufficient consideration to the question whether some outsiders should be designated. On the other hand, it is asserted by the defendants that they did consider the question and determined not to bring in outsiders. In any event, in the absence of any proof to the contrary, and there is none here, the question was solely a matter of business judgment on the part of the present Board of Directors, which is not subject to judicial review. This Court may not substitute itself for the Board in determining matters of internal management of the corporation, unless there is some violation of law or fraud. None is perceived here. It is of interest in this connection to observe that there has been no concealment of the intention of the Board to suggest some of their own number for reelection, for as far back as the preliminary prospectus dated May 6, 1964, it was stated that it was the intention of the Board of Directors to select six of their number for submission to the stockholders for reelection. This statement is repeated in the final prospectus issued in June. The Court is unable to discern anything reprehensible or even subject to criticism in the fact that the Board proposed six of their number for reelection.

Accordingly, it is the view of this Court that no cause of action has been established or is likely to be established by the plaintiff.

■■■■ Even aside from this consideration, we must proceed to the second aspect of this application, namely, whether in the exercise of its discretion the strong arm of equity should be exerted by the Court to restrain and enjoin the holding of the scheduled meeting. This is a matter addressed to the discretion of the Court and is governed by equitable considerations. This corporation has 130,000 shareholders in round figures. It has five million shares of stock of Series I and a like amount of Series II, or a total of ten million shares of stock outstanding. The plaintiff is a stockholder owning only 210 shares, or stock of the value of $4,200. This disproportion is a matter that the Court may well consider in determining the equities of the present application. On the other hand, the corporation has gone to considerable expense in sending out notices and proxies for the meeting. A considerable number of shareholders have replied that they will be personally present and are planning to do so. It would obviously be a great inconvenience and an unnecessary expense to the corporation and the stockholders who intend to be present if this Court were to stay the holding of the meeting.

Beyond that, this corporation, as plaintiff's counsel quite correctly pointed out, though principally a private corporation in the method of its organization and financing, has a public interest. The public, and specifically the Government, has an interest in its activities, and it is in the public interest that the business of the corporation should proceed.

**440**

In view of these considerations, the motion for a preliminary injunction will be denied.

A transcript of this oral opinion will constitute the findings of fact and conclusions of law.

Counsel may submit an appropriate order.